Marc A. Pergament
Weinberg, Gross & Pergament LLP
400 Garden City Plaza, Suite 403
Garden City, New York 11530
516-877-2424
Attorneys for the Debtors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

In re:

Locust Street Managers LLC,

Debtors.

Chapter 11

Case No. 08-14621-reg
and 09-11094-reg
(Jointly Administered)

------------------------------------------------------------X

MOTION FOR AN ORDER (I)(A) APPROVING AUCTION PROCEDURES FOR THE DEBTORS' PROPERTY, (B) SCHEDULING A FINAL SALE HEARING AND APPROVING FORM AND MANNER OF NOTICE THEREOF, AND (II) ORDER AUTHORIZING AND APPROVING THE SALE OF THE PROPERTY FREE AND CLEAR OF LIENS AND OTHER INTERESTS

Locust Street Developers, LLC ("Developers"), debtor and debtor in possession in these jointly administered chapter 11 cases (the "Debtor," collectively with co-debtor Locust Street Managers, LLC, the "Debtors"), hereby submits this motion (the "Motion"), pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for (i) entry of an order (the "Auction Procedures Order"), (a) approving auction procedures (the "Auction Procedures") in connection with the sale or substantially all of the assets, namely its real property located at 550 Locust Street, Mount Vernon, New York, and all Improvements, Appurtenant Rights and Personal Property related thereto (the "Property"); and (b) scheduling a final Sale Hearing (as defined below) to consider entry of the Sale Order (as

defined below) and approving the form and manner of notice of the auction for the Property and the Sale Hearing, including the form and manner of service of the notice (the "Auction and Hearing Notice"); and (ii) entry of an order (the "Sale Order") authorizing and approving the sale of the Property free and clear of liens and other interests to the successful bidder at the Auction. In support of the Motion, the Debtors, by and through their counsel, respectfully represents:

JURISDICTION, VENUE, STATUTORY PREDICATE

1. The Bankruptcy Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought in the Motion are sections 105(a), 363 and 365 of the Bankruptcy Code, Rules 2002, 6004 and 6006 of the Bankruptcy Rules, Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), and the Guidelines for the Conduct of Asset Sales (General Order M-331) (the "Guidelines").

BACKGROUND

A. The Chapter 11 Case

2. On November 20, 2008, Locust Street Managers, LLC ("Managers") filed with the Bankruptcy Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On March 10, 2009, Developers filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

3. Pursuant to an Order of this Court dated May 5, 2009, the Debtors' Chapter 11 cases are being jointly administered.

4. The Debtors continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. An Official Committee of Unsecured Creditors has not been appointed in these Chapter 11 cases, and no trustee or examiner has been requested or appointed in either of these Chapter 11 cases.

B. The Debtors

6. Managers' sole asset is its 100% membership interest in Developers (the "Membership Interest"), and Developers' sole asset is the Property, which includes a 70-unit residential condominium project. As such, Developers is a single asset real estate debtor, as such term is used in Section 101(51B) of the Bankruptcy Code.

C. BNYM's First Mortgage Claim Against the Property, And the Foreclosure Action

7. Pursuant to the Building Loan Mortgage and Security Contract, dated on or about September 19, 2005, and related documents (collectively, the "Loan Documents"), Bank of New York Mellon ("BNYM") agreed to loan Developers the sum of $15,500,000 in exchange for, *inter alia*, a first lien on the Property to secure the indebtedness under the Loan Documents. As of October 1, 2009, BNYM is owed no less than the sum of $15,762,021.31, which includes principal, plus interest, fees and expenses, including attorneys' fees, and fees to insure the Property post-petition.

8. On or about December 17, 2008, BNYM initiated a judicial foreclosure action in the Supreme Court of the State of New York, County of Westchester, against Developers (Index No. 27174-08) due to its failure to pay an outstanding principal balance of $13,225,357.12 as required under the Loan Documents, plus accrued interest (as of December 1, 2008) totaling $783,188.99.

9. On February 5, 2009, Developers, as well as co-defendants Steven Judelson and Natalie Stella Judelson, filed the Motion To Dismiss Pursuant to CPLR Rule 3211(a)(8) and (10).

10. On March 5, 2009, BNYM filed its Opposition to Defendants' Motion to Dismiss. No reply motions were filed and the motion is currently pending before the Supreme Court.

D. Facts Relevant to this Motion

11. The Debtors sought relief from their creditors under Chapter 11 of the Bankruptcy Code because they lacked the necessary funding to complete the 70-unit condominium project and because they were unable to obtain additional funding from BNYM or other third-party sources.

12. Since the bankruptcy filing, the Debtors, through the efforts of its principal, Steven Judelson, have continued to search for either a partner or for additional funding. Notwithstanding such efforts, it was ultimately determined that a sale of the Property was the best option for the Debtors' creditors.

13. Earlier this year, the Debtors commenced interviewing real estate brokers to market and sell the Property. The Debtors retained Newmark & Company Real Estate, Inc. d/b/a Newmark Knight Frank ("Newmark") because it is a full-service real estate advisory company with substantial experience in the disposition of commercial real estate. Newmark's retention was approved by the Court on July 22, 2009 (*see* Docket No. 50, *as amended by* Docket No. 52).

14. Newmark has commenced the marketing of the Property and, by this Motion, the Debtors seek approval of procedures by which to conduct a sale of the Property, free and clear of all liens, claims and encumbrances..

15. The solicitation of qualified bids for the auction is to be conducted pursuant to the Auction Procedures (attached as Exhibit A to this Motion).

16. The Debtors believe that the proceeds that should be realized from the sale of the Property through an auction are likely to produce the greatest value for the Debtors' estates.

17. The Debtors respectfully request that the timetable outlined in the Auction Procedures be approved. The timetable contemplates that: (i) information will be made available to prospective bidders to permit due diligence to begin immediately upon the Bankruptcy Court's approval of the Auction Procedures Order; (ii) sealed written offers will be submitted to the Broker on or before January 26, 2010; (iii) the selection of qualified bids no later than January 28, 2010; (iv) the holding of an auction on January 29, 2010; and (v) a hearing on February 9, 2010 to approve the sale of the Property to the winning bidder so that the order approving the sale is entered no later than ten (10) business days following the Auction.

RELIEF REQUESTED

18. By this Motion, the Debtors seek entry of two (2) orders:

(i) The Debtors requests entry of an order, substantially in the form attached hereto as Exhibit B, (A) approving the Auction Procedures, the form of which is attached hereto as Exhibit A for (i) submitting bids for the Property, and (ii) conducting an auction (the "Auction") with respect to the Property in the event the Debtors receive more than one qualified bid ("Competing Bids"); (B) scheduling the Auction and a hearing to approve a sale (the "Sale Approval Hearing") with respect to any qualified bid(s) accepted by the Debtors, for January 29, 2010 and February 9, 2010, respectively.

(ii) At the Sale Approval Hearing, the Debtors will request entry of an order, pursuant to sections 105(a) 363 and 365 of the Bankruptcy Code and Rules 2002, 6004 and 6006 of the Bankruptcy Rules, approving the Property Sale. A copy of the proposed order approving the Auction (the "Sale Order") is attached hereto as Exhibit C.

AUCTION PROCEDURES

A. Proposed Auction Procedures

19. The Debtors are requesting that the Bankruptcy Court approve the Auction Procedures for the Property with a final sale hearing to occur by February 9, 2010. The other key provisions of the Auction Procedures are as follows:

(i) Due Diligence. In order to perform due diligence and be allowed to submit a bid for the Property, a party expressing an interest in the Property (a "Potential Bidder") must provide to Newmark an executed confidentiality agreement.

(ii) Bid Requirements. A "Qualified Bid" must satisfy the requirements set forth in the Auction Procedures, including, but not limited to:

(a) Be accompanied by a marked and executed copy of the form Contract of Sale (discussed below).

(b) Be accompanied by a list of any executory contracts the Qualified Bidder seeks to have the Debtors assume and assign to it under such Written Offer and demonstrates the Qualified Bidder's ability to perform under any such executory contracts;

(c) Be willing to consummate and fund the proposed transaction before February 15, 2010 (the "Closing Deadline");

(d) State that the Qualified Bidder is financially capable of consummating the transactions contemplated by the Bid and contain evidence that such Qualified Bidder has received debt and/or equity funding commitments or has financial resources readily available sufficient in the aggregate to consummate the transactions contemplated by Bid;

(e) Fully disclose (1) the identity of the persons or entities with an ownership interest in the Qualified Bidder or who will be participating in connection with such Qualified Bid, (2) the terms of any such ownership or participation, and, (3) in the case of an entity formed for the purpose of acquiring the Property, the parties that will bear liability for any breach by such entity;

(f) State that the Written Offer is irrevocable until the closing of the transaction, if such Qualified Bidder is designated as a Successful Bidder or a Backup Bidder (each as defined in the Auction Procedures);

(g) Not request or entitle the Qualified Bidder to any transaction or break-up fee, broker fee or similar type of payment;

(h) Any agreement that provides for the purchase of the Debtors' books and records related to the Property must contain provisions allowing the Debtors reasonable access to these books and records for the administration of their bankruptcy cases;

(i) Not contain any due diligence or financing contingencies of any kind;

(j) Include evidence of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing; and

(k) Include a good faith deposit (the "Good Faith Deposit") in the form of a certified check, wire transfer or such other form, as is acceptable to the Debtors, payable to the order of Weinberg, Gross & Pergament LLP in an amount equal to at least ten percent (10%) of the overall purchase price in the Bid.

BNYM shall be deemed to be a Qualified Bidder.

*Notice of the Auction.*

20. If more than one Qualified Bid is received, the Debtors (through Newmark) will conduct an auction (the "Auction"). The Auction will begin at 12:00 noon (Eastern Time) on the date established by the Bankruptcy Court in the Auction Procedures Order at the offices of Morrison & Foerster LLP, 1290 Avenue of the Americas, New York, New York

10104, or at any other location in the District the Debtors may later designate. If another location is designated, then the Debtors will notify all Qualified Bidders who submitted Qualified Bids.

21. If only one Qualified Bid is received by the Bid Deadline, the Debtors will have the option to bring that Qualified Bid to the Court as the highest and best offer for the Property, and the Debtors will proceed directly to the Sale Hearing.

*The Auction Process.*

22. The Debtors and their designated professionals will direct and conduct the Auction. At the beginning of the Auction, the Debtors shall announce the highest Qualified Bid. All bids made thereafter will be Overbids (as defined below), and will be made on an open basis and all material terms of each bid shall be fully disclosed to all other bidders. The Debtors will maintain a transcript of all bids made and announced at the Auction, including the Qualified Bid, all Overbids and the Successful Bid.

23. An Overbid is any bid made at the Auction after Debtors' announcement of the Qualified Bid. To submit an Overbid for purposes of this Auction, a qualified Bidder must comply with the following conditions. The first Overbid after Qualified Bidder's Bid is announced shall be no less than: (a) the Qualified Bidder's Bid; plus (b) at least $100,000. Any subsequent Overbids shall be made in increments of $100,000.

24. The Debtors, after consultation with BNYM, reserve the right to consider successive Qualified Bids in determining whether any such Qualified Bid or Qualified Bids constitutes a higher or better offer than previous bids, and reserve the right to reduce bid increments.

*Identification of the Successful Bidder and Backup Bidder(s)*

25. At the close of the Auction, the Debtors will identify the Qualified Bidder that had the highest and best bid (the "Successful Bid," and the bidder or bidders being the "Successful Bidder"), which will be determined by considering, among other things:

(i) the total consideration to be received by the Debtors;

(ii) the likelihood of each Qualified Bidder's ability to timely close on the transaction and make any deferred payments, if applicable; and

(iii) the net benefit to the estate.

26. The Debtors will then announce the Backup Bidder(s) (as defined in the Auction Procedures). Each Backup Bid shall remain open and binding until the earlier of (i) two (2) business days after the closing of the transaction by which the Property is transferred to a Qualified Bidder pursuant to the Auction Procedures and (ii) fifteen (15) days after the entry of an order of the Bankruptcy Court approving a transaction for the transfer of the Property.

*Acceptance of Bid From Successful Bidder*

27. The Debtors presently intend to sell the Property to the Successful Bidder pursuant to the form of the Contract annexed hereto as Exhibit "D." The Debtors will have accepted a Qualified Bid only when that Bid has been approved by the Bankruptcy Court at the Sale Hearing. Except as otherwise provided for in the Contract (Ex. D), all of the Debtors' right, title and interest in and to the Property will be sold free and clear of the Liens, with the Liens attaching to the proceeds of the Property with the same validity and priority as the Lien had on the Property immediately before the Sale.

28. Under the Contract, the hearing (the "Sale Hearing") on whether to grant the relief sought in the Sale Motion needs to be held no later than ten (10) Business Days following the Auction. See § 4.6.2.

*Notice*

29. In connection with filing this Motion, the Debtors served a copy of this Motion, the Contract, the proposed Auction Procedures Order, and all exhibits to such orders upon the following persons electronically and first class mail, (i) the United States Trustee; (ii) counsel to BNYM; (iii) all entities known to have expressed an interest in acquiring the Property; (iv) all parties known to be asserting a Lien against the Property; and (v) all parties filing Rule 2002 notices in these Chapter 11 cases (collectively, the "Auction Procedures Parties").

30. Assuming the Bankruptcy Court approves the proposed Auction Procedures Order, immediately after entry of the Auction Procedures Order, the Debtors will commence service of the Auction and Hearing Notice, including causing such Auction and Hearing Notice to be served upon: (i) the Auction Procedures Parties; (ii) all known creditors of the Debtors; and (iii) all affected federal, state and local regulatory and taxing authorities, including the Internal Revenue Service.

31. The Debtors believe that the foregoing notice is adequate and sufficient to provide effective notice of the Auction Procedures, the Auction and the proposed Sale to potentially interested parties in a manner designed to maximize the chance of obtaining the broadest possible participation in the sale process while minimizing the estate's administrative costs. Accordingly, the Debtors request that the Bankruptcy Court find that notice in this manner is sufficient and that no further notice of the Auction, the Auction Procedures or the proposed Sale is required.

EXTRAORDINARY SALE PROVISION

32. By this Motion, the Debtors request that the Court grant the Debtors relief from the ten-day stay imposed by Bankruptcy Rule 6004(h).

## BASIS FOR RELIEF REQUESTED

### A. The Proposed Sale is Within the Debtors' Sound Business Judgment

33. Bankruptcy Code section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate ...." 11 U.S.C. § 363(b)(1)(Westlaw, 2009).

34. Bankruptcy Code section 105(a) provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a)(Westlaw, 2009).

35. The Debtors' sale or use of property of the estate outside the ordinary course of business should be approved by the Bankruptcy Court if the debtor can demonstrate a sound business justification for the proposed transaction. *See, e.g., In re Lionel Corp.*, 722 F.2d 1063, 1070-71 (2d Cir. 1983); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 680 (Banks. S.D.N.Y. 1989).

36. The Debtors submit that there is more than adequate business justification to sell the Property. The Debtors' management and professionals concluded that the best way to maximize the value of the Debtors' estate for the benefit of their creditors is to sell the Property.

37. Finally, as previously discussed, all creditors and parties in interest will receive adequate notice of the Auction Procedures, the Auction and the proposed Sale. Such notice is reasonably calculated to provide timely and adequate notice to the Debtors' creditors, those parties most interested in this Chapter 11 case, those parties potentially interested in bidding on the Property and others whose interests are potentially implicated by the proposed Sale. The Debtors submit that such notice is sufficient for entry of the Sale Order and satisfies requisite notice conditions for approval of the Sale under Bankruptcy Code section 363(b).

38. Under these circumstances, sound business reasons exist that justify the immediate sale of the Property outside the ordinary course of business and before the confirmation of a reorganization plan. Accordingly, the Debtors submit that the proposed Sale to the Buyer, pursuant to Bankruptcy Code section 363, should be approved.

B. The Sale Satisfies the Requirements of Bankruptcy Code Section 363(f) for a Sale Free and Clear of Claims

39. Under Bankruptcy Code section 363(f), a debtor-in-possession may sell property free and clear of any interest in such property of an entity other than the estate only if, among other things:

> (a) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (b) such entity consents;
>
> (c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (d) such interest is in bona fide dispute; or
>
> (e) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f) (Westlaw, 2009).

40. Since Bankruptcy Code section 363(f) is drafted in the disjunctive, satisfaction of any one of its five (5) requirements will suffice to permit the sale of the Property "free and clear" of Liens and Interests. *See In re Dundee Equity Corp.*, 1992 WL 53743, at *12 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met."); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same); *In re Wolverine Radio Co.*, 930 F.2d 1132, 1147 fn.24 (6th Cir. 1991), (stating that Bankruptcy Code section 363(f) written

in disjunctive; holding that court may approve sale "free and clear" provided at least one of subsections of Bankruptcy Code section 363(f) is met).

41. The Debtors submit that one of the subsections of Bankruptcy Code section 363(f) applies to holders of liens and interests in or against the Property. The lien and interest holders will be adequately protected, because their liens and/or interests will attach to the net proceeds of the Sale, subject to any claims and defenses the Debtors may possess with respect thereto. Accordingly, the sale should be approved under Bankruptcy Code section 363(f).

42. In addition, the Debtors submit that the Property may be sold free and clear of claims, including successor liability claims. Several courts have held that notwithstanding the use of the term "interest" in the statutory language of Bankruptcy Code section 363(f), that section grants bankruptcy courts the power to convey Property free and clear of claims. *See, e.g., In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *5 (Bankr.D.Del. Mar. 27, 2001) ("Authorizing the sale [of Debtor's Property] free and clear of . . . successor liability claims achieves the purpose of [Bankruptcy Code] section 363 intended by Congress"). Other courts, concluding that Bankruptcy Code section 363(f) does not empower them to convey Property free and clear of claims, have nevertheless found that Bankruptcy Code section 105(a) provides such authority. *See In re White Motor Credit Corp.*, 75 B.R. 944, 948 (Bankr.N.D. Ohio 1987) (stating that the absence of specific authority to sell Property free and clear of claims poses no impediment to such a sale, as such authority is implicit in the court's equitable powers when necessary to carry out the provisions of title 11).

C. The Court Should Fix a Deadline to Object to (i) the Assumption and Assignment of Executory Contracts (ii) the Cure Amounts as Set Forth in a Cure Schedule

43. In connection with the assumption and assignment of executory contracts, pursuant to any sale transactions for the Property, the Debtors believe it is necessary to establish a process by which the Debtors and the counterparties to executory contracts that will be assumed can establish the cure obligations, if any, to be paid in accordance with section 365 of the Bankruptcy Code for the counterparties of such assumed contracts to assert any objection they may have to the assumption and assignment of same. If necessary, no later than thirty (30) days before the Sale Hearing, the Debtors will file a schedule of such cure obligations (the "Cure Schedule") with the Court and serve such schedule by first class mail on the parties to executory contracts that may be assumed and assigned in connection with sale of the Property. The Debtors propose that any objections (other than objections to adequate assurance of future performance for executory contracts to be assumed and assigned pursuant to a Successful Bid) to the assumption and assignment of any executory contract identified on the Cure Schedule, must be in writing, filed with the Court, and be actually received on or before the seventh (7th) calendar day before the Sale Hearing upon those parties identified for receipt of such notice in the Auction Procedures Order (including the Debtors and the Lenders, collectively, the "Notice Parties").

44. The Debtors request that any party failing to object to the proposed transactions be deemed to consent to the treatment of their executory contract or unexpired lease under section 365 of the Bankruptcy Code (including the proposed cure amount) and this Sale Motion. *See In re Tabone, Inc.*, 175 B.R. 855, 858 (Bankr.D.N.J. 1994) (by not objecting to sale motion, creditor deemed to consent); *In re Gabel*, 61 B.R. 661, 667 (Bankr.W.D. La. 1985) (same). Moreover, the Debtors request that each such party be deemed to consent to the

assumption and assignment of its executory contract notwithstanding any anti-alienation provision or other restriction on assignment. *See* 11 U.S.C. §§ 365(c)(1)(B), (e)(2)(A)(ii), and (f).

D. The Court Should Grant the Debtors Relief From Bankruptcy Rule 6004(h)

45. The Debtors also request that the Court waive the stay imposed by Bankruptcy Rules 6004(h) and 6006(d). Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." Under Bankruptcy Rule 6006(d) "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." (Westlaw, 2009.)

46. Courts in this district have waived these ten-day stays upon a showing of business need. *See In re Adelphia Communications Corp.*, 327 B.R. 143, 175 (Bankr.S.D.N.Y. 2005) ("As I find that the required business need for a waiver has been shown, the order may provide for a waiver of the 10-day waiting period under Fed. R. Bankr. P. 6004(g)."); *In re PSINet Inc.*, 268 B.R. 358, 379 (Bankr.S.D.N.Y. 2001) (requiring demonstration of "a business exigency" for waiver of ten-day stays under Bankruptcy Rules 6004(g) and 6006(d). In general, courts will grant waivers when doing so is important to the Debtor's financial health. *See In re Second Grand Traverse Sch.*, 100 Fed. Appx. 430, 434-35 (6th Cir. 2004) (affirming decision waiving ten-day stay because "time was of the essence"); *In re Decora Indus., Inc.*, 2002 WL 32332749, at *9 (D. Del. May 20, 2002) ("[T]he Court understands that an immediate closing is required to remedy Debtor's precarious financial and business position. Accordingly, the Court will waive the Rules 6004(g) and 6006(d), allowing the parties to close.").

47. As described above, the Debtors are experiencing a liquidity crisis. In light of this, and a desire to maximize the value of the Property, the Debtors anticipate that the Successful Bidder will seek to close as soon as possible. Imposition of the ten-day stays under Interim Bankruptcy Rule 6004(h) and 6006(d) is likely to cause bidders to reduce the value of their bids for the Property, to account for the value that will evaporate during the stay. Therefore, waiver of the ten-day stays imposed by Interim Bankruptcy Rules 6004(h) and 6006(d) would help to maximize the value of the Debtors' estates.

48. Because the Debtors have demonstrated a need requiring the immediate effectiveness of the Sale Order, this Court should exercise its authority under Bankruptcy Rules 6004(h) and 6006(d) and waive the ten-day stays that otherwise would apply to the Sale Order.

## NOTICE

49. Notice of the Motion has been given to all creditors and parties in interest. The Debtors respectfully submit that such notice is sufficient, and request that this Court find that no further notice of the relief requested herein is required.

## NO PRIOR REQUEST

50. No prior request for the relief requested herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request the Bankruptcy Court enter an order, substantially in the form annexed hereto as Exhibit B, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: Garden City, New York
November 16, 2009

Weinberg, Gross & Pergament LLP
Attorneys for the Debtors

By: ______________________________
Marc A. Pergament
400 Garden City Plaza, Suite 403
Garden City, New York 11530
(516) 877-2424